IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

SPARKMAN LEARNING CENTER AND
JESSIE CARTER

PLAINTIFFS

VS.                    CASE NO. 06-1111

ARKANSAS DEPARTMENT OF HUMAN
SERVICES, ET AL.                    DEFENDANTS

**DEPARTMENT OF HUMAN SERVICES' BRIEF IN SUPPORT OF
MOTION TO DISMISS COMPLAINT AND FIRST AMENDED
COMPLAINT**

Defendants, by and through their attorneys, Breck Hopkins and Kate

Bridges, Office of Chief Counsel, pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, move to dismiss the plaintiffs' Complaint (Dkt. No. 1) and, in the

alternative, to dismiss the First Amended Complaint (Dkt. No. 37), should this

Court grant Sparkman leave to amend.

I.     AMENDMENT OF THE COMPLAINT WOULD BE FUTILE.

Sparkman did not obtain leave from this Court to amend its complaint, nor

did it seek or obtain defendants' written consent to the amendments, as required by

Fed. R. Civ. P. 15(c).   What is more, leave to amend Sparkman's complaint would

be futile. In its order staying the federal proceedings, this Court correctly found

that Sparkman would have the opportunity to raise all of its constitutional claims in

the state proceeding.   Despite this finding, Sparkman failed to do so.  Having failed

1

to raise all of its constitutional claims in the state proceedings, Sparkman is precluded from amending its complaint to raise additional constitutional claims. As the amendment Sparkman intends to make is precluded, it would be futile to grant Sparkman leave to amend on that basis (*see* Section III, *infra*); *Wintermute v. Kansas Bankers Sur. Co.*, 630 F.3d 1063, 1068 (8th Cir. 2011) (holding any amendment would have been futile because the doctrine of *res judicata* would have foreclosed the claims).

Sparkman's major amendment to the complaint – the addition of Janie Huddleston as a defendant – is futile because the statute of limitations has long expired on any action against Ms. Huddleston (*see* Section II, *infra*).  Leave would also be futile because the amended complaint does nothing to rescue the original complaint's utter failure to state any justiciable equal protection claim (*see* Section IV, *infra*).   In any event, the arguments in this motion to dismiss are applicable to both the Complaint and Amended Complaint equally, and whichever complaint is operative should be dismissed.

## II.  JANIE HUDDLESTON CANNOT BE ADDED TO THE CASE BECAUSE ANY CLAIMS AGAINST HER ARE BEYOND THE APPLICABLE STATUTE OF LIMITATIONS.

Janie Huddleston must be dismissed from this suit in all capacities because her addition does not relate back to the original complaint.  The abstention stay issued by this Court in 2007 did not toll any potential suit against Ms. Huddleston

2

in her individual or official capacity because Ms. Huddleston was never a party to that stayed proceeding. An abstention stay may allow a timely-filed claim to be resumed after the state proceedings are completed, but it does not excuse a plaintiff from timely filing a claim in the first place. *See, e.g., Eidson v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 641 (6th Cir.2007) (holding a "prerequisite to obtaining any such tolling relief, of course, is the timely filing of the § 1983 action that will prompt abstention during the pendency of related state court proceedings. Because plaintiff did not timely file his § 1983 action, he forfeited any hope of such relief").

Thus, for statute of limitations purposes, the timeline for adding Ms. Huddleston to the complaint must be measured as of the date of the amended complaint. Any individual or official capacity claims based on Ms. Huddleston's activities in 2004-2006 are now far outside the three-year statute of limitations for civil rights violations in this jurisdiction. *Morton v. City of Little Rock,* 934 F.2d 180, 183 (8th Cir. 1991).

Furthermore, Sparkman's allegations against Ms. Huddleston as a new party relate to her tenure as the director of DCCEE – a position she left on June 1, 2004. Fed. R. Civ. P. 15(c)(1)(C)(ii) provides that an amendment adding a party relates back to the date of the original pleading only if "the party to be brought in by amendment: … knew or should have known that the action would have been

3

brought against it, but for a mistake concerning the proper party's identity." In other words, the amendment relates back "only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *Pierce v. City of Chicago*, No. 09 C 1462, 2011 WL 2433495 (N.D. Ill. 2011) (internal quotations and citations omitted).

Sparkman does not seek to substitute Huddleston for another person, and therefore, cannot argue that it misidentified one party for another. Ms. Huddleston's role at DHS has been well-known and Sparkman cannot fairly claim that it did not know or could not have discovered, with due diligence, any of the allegations it now makes over five years after this Court abstained and stayed the case. Accordingly, Huddleston has no basis to suspect that she would be accused of wrongdoing, no basis to suspect that anyone had mistaken her identity, and thus no reason to suspect that, but for a mistake concerning her identity, Sparkman would have sued her in 2006 and made the extensive allegations against her it now makes in its amended complaint. Thus, all claims made against Ms. Huddleston must be dismissed.

## III.    DEFENDANTS HAVE QUALIFIED IMMUNITY FROM SUIT FOR INDIVIDUAL LIABILITY.

All individual-capacity claims against DHS officials must be dismissed. Public officers require immunity from § 1983 suits for damages to shield them from undue interference with their duties and from potentially disabling threats of

liability.  *Harlow v. Fitzgerald,* 457 U.S. 800, 806 (1982).  Thus, government

officials performing discretionary functions are immune from suit and liability for

civil damages under§ 1983, insofar as their conduct does not violate clearly

established constitutional or statutory rights of which a reasonable person would

have known. *Id.,* 457 U.S. at 817.  To overcome qualified immunity, plaintiffs

must do more than show a violation of an abstract right.  Instead, plaintiffs "must

make a 'particularized showing' that a 'reasonable official would understand that

what he is doing violated that right, or that 'in the light of preexisting law the

unlawfulness' of the action was 'apparent.'" *Anderson v. Creighton*, 483 U.S. 635,

640 (1987).  In other words, an official is entitled to qualified immunity even if he

wrongly, but reasonably, believed his actions were lawful.  *Malley v. Briggs*, 475

U.S. 335, 341 (1986).

Public officials are not liable under § 1983 unless *their own conduct* violates

clearly established federal rights of which a reasonable person would have known.

There is no *respondeat superior* or vicarious liability.  *Monell v. New York City*

*Dept. of Social Servs*., 436 U.S. 658, 691 (1978).

In *Saucier v. Katz,* 533 U.S. 194 (2001), the U.S. Supreme Court mandated a

two-step sequence for resolving government officials' qualified immunity claims.

First, a court must decide whether the facts that a plaintiff has established a

violation of a constitutional right.  533 U.S at 201.  Second, if the plaintiff has

satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct, in light of the particular facts of the case. *Id.* The "clearly established" test asks whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation he or she encountered. 533 U.S. at 202. In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court held that this two-step process need not be approached in rigid order, but rather the district courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.,* 555 U.S. at 236.

In this case, defendants do not dispute that, as a matter of law, plaintiffs have a general constitutional right to equal protection. But even if the facts they allege in their amended complaint are taken as true, those facts state no claim for a violation of a Constitutional right. As discussed in more detail in section V, *infra,* plaintiffs point to no similarly-situated comparators who engaged in the same wrongdoing but were treated differently, and the facts as alleged in the amended complaint provide no basis from which to reasonably infer any type of racial animus.

Second, even if, assuming *arguendo,* the bald conclusions and speculations that comprise the amended complaint, taken in the best possible light, could

possibly suggest some equal protection violation, there is nothing in the complaint to support an inference that any of the defendants would have known their conduct was unlawful in these circumstances.   In fact, the defendants have pointed to no specific "conduct" of any of the individual-capacity defendants in this case. Again, there is no *respondeat superior* liability under § 1983; public officials are not personally liable for civil damages under § 1983 "insofar as their conduct does not violate any established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 817.

The only allegations that plaintiffs make regarding these officials are bald conjectures that these officials somehow "helped to orchestrate" actions of other DHS officials.  These suppositions are not enough to state any sort of claim that would overcome qualified immunity. "[U]nadorned speculation will not suffice to invoke the federal judicial power." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 44 (1976).  Even assuming, *arguendo*, that some DHS official was guilty of wrongdoing, none of the named defendants may be held liable simply because they negligently employed or supervised a tortfeasor.  *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 407 (1997) ("A showing of simple or even heightened negligence will not suffice"); *Monell*, 436 U.S. at 692. Again assuming *arguendo* that some DHS official failed to follow DHS' clear and undisputed non-discrimination policies, that failure does not

7

subject policy makers such as Ms. Huddleston to liability. *Elder-Keep v. Aksamit*, No. 05-3991, 2006 WL 2389430, at *6 (8th Cir. August 21, 2006).

Furthermore, any reasonable person would be hard-pressed to infer from this complaint that any DHS official – even those personally involved in the Sparkman transactions but not named in this complaint – would have known they were violating any of Sparkman's constitutional rights, when DHS merely pursued a legitimate enforcement action against Sparkman for proven wrongdoing, shepherded the results of that action through the administrative and judicial review process, and objectively applied DHS Policy 1088 once the appeal process was final.   Thus, all individual capacity claims for damages must be dismissed because those claims are barred by qualified immunity.

IV.   SPARKMAN'S CLAIMS ARE PRECLUDED BY THE FINAL
      DECISION OF THE ARKANSAS COURT OF APPEALS.

Sparkman's complaint must be dismissed because all of the claims it makes are precluded by the final decision of the Arkansas Court of Appeals.  Principles of preclusion allow federal courts to stay or dismiss proceedings in deference to state-court actions.  See *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005).  When there is parallel state and federal litigation, once the state-court adjudication is complete, disposition of the federal action is governed by preclusion law. 544 U.S. at 292 (noting that in a return to a stayed federal proceeding, preclusion rather than *Rooker-Feldman* controls).  The Full Faith and

Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state-court judgment as another court of that state would give. *Id.* (citations omitted)*; accord Haberer v. Woodbury County,* 188 F.3d 957, 961 (8th Cir. 1999).   State judicial decisions "have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken." 28 U.S.C. § 1738.

The preclusive effect of a state court judgment is thus governed by the law of the state where the judgment is rendered.  *See, e.g., Misischia v. St. John's Mercy Health Sys.,* 457 F.3d 800, 804 (8th Cir. 2006).   Under Arkansas law, claim preclusion, or res judicata, bars re-litigation when five factors are present: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Hardy v. Hardy*, 2011 Ark. 82, 6-7 (2011).  Where a case is based on the same events as the subject matter of a previous lawsuit, claim preclusion will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies.  *Id., citing Beebe v. Fountain Lake School Dist.,* 365 Ark. 536, 231 S.W.3d 628 (2006); *Office of Child Support Enforcement v. Willis,* 347 Ark. 6, 59 S.W.3d 438 (2001).

All of these elements are present in this case:

(1) *The Circuit Court of Pulaski County, Arkansas, was a court of competent jurisdiction to judicially review the administrative findings.*  Arkansas law provides that a petition for judicial review of a final agency determination may be filed in the Circuit Court of Pulaski County. Ark. Code Ann. § 25-15-212(b)(1)(B).  The Arkansas Court of Appeals is the court of competent jurisdiction to hear the appeal from the Circuit Court decision affirming DHS' determination.  ARK. CONST. amend. 80, §§ 5-6; Ark. R. S. Ct. 1-2 (e).

 (2) *The Court of Appeals opinion is a final judgment on the merits.*  The Court of Appeals' decision disposed of Sparkman's claims on the merits and its mandate was issued on March 27, 2012.  Sparkman did not seek review of that decision by the Arkansas Supreme Court.  Once the court's mandate is handed down and the time for review or rehearing passes, the disposition becomes final. Ark.  R. S. Ct. 5-3(a).

(3)  *The state litigation was "fully contested in good faith."*  Both DHS and Sparkman fully contested and defended their actions in extensive litigation in all forums leading to the Court of Appeals' final decision that there was no constitutional infirmity in DHS' conduct.

Res judicata also bars claims not fully litigated if the plaintiff has the opportunity to litigate it in the prior proceeding but does not do so.  *Hunt v. Perry*, 355 Ark. 303, 314, 138 S.W.3d 656, 662 (2003) (stating it is well-settled that *res*

*judicata* precludes claims that could have been raised in an earlier proceeding).

Sparkman cannot now return to federal court to litigate an equal protection claim

after squandering the opportunity to litigate that claim in the state proceeding.  For

claim preclusion purposes, the question is whether both theories were, or could

have been, raised in the course of the state cases.  *Knutson v. City of Fargo,* 600

F.3d 992, 996 (2010).

It is clear that Sparkman had a full and fair opportunity to litigate its equal

protection claim in circuit court and on appeal.  Sparkman invoked an equal

protection claim in their federal complaint, but abandoned their equal protection

claim in the state forum even after this Court abstained from that claim.  *See*

Complaint at para. 19 (Dkt. No. 1).  When this Court abstained, it did not split

Sparkman's equal protection and due process claims – it abstained from all

pending claims and expressly found that Sparkman had an adequate opportunity to

raise all of their claims of federal civil rights violations in the state proceeding.

(Dkt. No. 24).[1]  DHS has objected since this case began to simultaneous federal

---

[1] When abstention is warranted, the court should merely stay rather than dismiss the
federal action if (1) a plaintiff seeks monetary damages or (2) issues may need to
be determined in federal court after state court proceedings conclude. *Yamaha
Motor Corp. v. Stroud,* 179 F.3d 598, 603-04 (1999).  If this case had been one
requesting only injunctive relief, this Court would have been required to dismiss
rather than stay the action.

and state litigation, and has never acquiesced in any split of the equal protection and due process claims.

(4) *Both suits involve the same claim or cause of action.*  There can be no serious dispute that the state and federal litigation concern the same occurrence, namely, Sparkman's placement of an individual on the National Disqualified List in a position of management.  Sparkman vigorously – but unsuccessfully – litigated its due process claims to finality.  Those claims unquestionably are precluded by the decision of the Arkansas Court of Appeals, which framed the issue as: "[Sparkman] argues that the procedure used by [DHS]…was so irregular that it violated [Sparkman's] rights to due process under the Fourteenth Amendment to the United States Constitution."  *Sparkman,* 2012 Ark. 194.  The circuit court had answered this question in the negative, and the Court of Appeals affirmed.  *Id.*  The Court of Appeals noted that a fair hearing was a "basic requirement of due process," and found that "there was no evidence of such irregularities" and that Sparkman had not demonstrated any prejudice in the conduct of the hearing. *Id.*

Even though Sparkman chose to focus its arguments on the due process issue in the state litigation, all constitutional claims were necessarily subsumed in the state proceedings due to the scope of administrative review.  Under Ark. Code Ann. § 25-15-212 (h), reversal of an administrative decision is proper "if the substantial rights of the petitioner have been prejudiced because the administrative

findings, inferences, conclusions, or decisions are (1) [i]n violation of

constitutional or statutory provisions … [or] … [m]ade upon unlawful procedure."

Ark. Code Ann. § 25-15-212 (h) (1), (3).

It makes no difference that Sparkman opted to focus on due process in the

state proceeding, because "[t]he same cause of action framed in terms of a new

legal theory is still the same cause of action."  *Knutson*, 600 F.3d at 1015 (quoting

*NAACP v. Metropolitan Council*, 125 F.3d 1171, 1174 (8th Cir. 1997)).  "[A]

litigant cannot attempt to relitigate the same claim under a different theory of legal

recovery."  *U.S. v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994) (citation omitted);

*see also Krison v. Nehls*, 767 F.2d 344, 348 (7th Cir. 1985) (holding that the fact

that the prior state action was "in the nature of certiorari" to review an

administrative proceeding does not deprive the earlier action of its preclusive effect

if the court had the authority to review substantive legal claims beyond

administrative review).

Even if Sparkman had not litigated the existence of a specific constitutional

violation in state court, all that need be shown to warrant claim preclusion is that

the claim was sufficiently related to the claim asserted in the first action so that it

could have been raised in the first instance.  *Murphy v. Jones*, 877 F.2d 682, 686

(8th Cir. 1989), citing *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948); *Poe v.*

*John Deere Co*., 695 F.2d 1103, 1105 (8th Cir. 1982), and *Headley v. Bacon*, 828

F.2d 1272, 1275 (8th Cir. 1987) (stating "Res judicata may operate for practical purposes to require joinder of claims by barring their assertion in later actions."). Sparkman should not be given a third[2] chance to re-litigate these issues. *See Taggart v. Moore,* 292 Ark. 168, 171, 729 S.W.2d. 7, 9 (1987) (res judicata applies even if issue was not litigated in the first trial, if it "should have been included" in the former trial).

5) *Both suits involve the same parties or their privies.* Both the federal and state actions were instituted against DHS for regulatory actions carried out under federal and state regulations and rules. All parties sued in their official capacities are in privity with DHS. *Micklus v. Greer,* 705 F.2d 314, 317 (8th Cir. 1983).

As for parties sued in their individual capacities, in order to prevail on an individual capacity claim, Sparkman must sequentially: 1) show a constitutional deprivation; 2) identify the person or persons responsible for the deprivation; and 3) establish that a reasonable official would have known that his or her behavior was illegal. Because the final state decision precludes Sparkman from establishing the existence of any constitutional deprivation, there can be no basis for this Court to find any ongoing constitutional violation that a reasonable official would have known was unconstitutional.

---

[2] Sparkman was afforded two separate administrative hearings on its appeal of the determination that a person on the USDA National Disqualified list was exercising management control.

14

In the protracted state proceedings, Sparkman did not offer evidence or argument regarding any equal protection claim, nor did they take the opportunity to proffer evidence regarding the person or persons allegedly responsible for any constitutional violation. Sparkman was obligated to present such evidence to the administrative law judge in order to preserve the issue for judicial review. *Carson v. St. Bd. of Medical Examiners,* 334 Ark. 614, 627, 976 S.W.2d 934, 941 (1998) (holding that licensee was required to first raise constitutional point with administrative agency and failed to do so). Furthermore, Sparkman made no express reservation of any claim or issue in state court, as necessary to hold those issues for later federal court consideration. *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411 (1964) (holding that a party who has been forced to litigate in state court may reserve claims for later adjudication in federal court by informing the state court of its election).

In sum, as the claims in this case are now precluded by the final decision of the Arkansas state courts, there are no viable issues remaining for trial, and this Court is urged to deny Sparkman's request for preliminary relief. There is no longer any basis for any federal relief through a section 1983 action, because any

facts that would underpin such relief have been conclusively litigated in state court and are entitled to preclusive effect.[3]

## V.   SPARKMAN HAS FAILED TO STATE A PLAUSIBLE EQUAL PROTECTION CLAIM.

All equal protection claims in this complaint must be dismissed for failure to state a claim on which relief can be granted.  A federal complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden,* 588 F.3d at 594 (quoting *Iqbal,* 129 S. Ct. at 1949).

A pleading that merely pleads "labels and conclusions," or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of factual enhancement will not suffice. *Id.* Determining whether a claim is plausible

---

[3] Despite having the opportunity to do so, Sparkman's state appeal did not challenge the evidentiary basis for the determination –made by both administrative law judges and affirmed by the Circuit Court – that Sparkman violated program regulations (because Patricia Whitaker was a principal in the operation of Sparkman).  This finding precludes as a factual matter Sparkman's assertion that there was no non-discriminatory reason to impose sanctions on Sparkman.

is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Sparkman argues that even if they violated federal law, DHS did not make similar determinations with respect to similarly-situated Caucasian providers.  In other words, Sparkman alleges that DHS engaged in selective prosecution based on race.  Decisions to prosecute may not be based on race.  *Oyler v. Boles*, 368 U.S. 448, 456 (1962).  However, a presumption of regularity attaches to prosecutorial decisions.  *U.S. v. Armstrong*, 517 U.S. 456, 464 (1996).  Clear evidence is required to overcome that presumption.  *U.S. v. Patterson*, 258 F.3d 788, 790 (8th Cir. 2001).  Sparkman must show that DHS' actions had a discriminatory effect and were motivated by a discriminatory purpose.  *Jefferson v. City of Omaha Police Dep't*, 335 F.3d 804, 807 (8th Cir. 2003).  To establish a discriminatory effect in a case involving alleged racial discrimination, Sparkman must show that they were treated differently than similarly-situated individuals of a different race. *Armstrong*, 517 U.S. at 469.  The plaintiffs must also show that selective prosecution occurred in regards to similarly-situated parties "particularly with respect to the same time period."  *Anderson v. Douglas County,* 4 F.3d 574, 577 (8th Cir. 1993).

"Selective prosecution" is a broad term that covers both criminal prosecution and administrative enforcement actions.  Selective prosecution jurisprudence is

regularly applied in various administrative contexts.[4]  For example, the Federal

Aviation Administration's selective interpretation and enforcement of

administrative regulations regarding airframe icing was found to be selective

prosecution.  *Central Airlines, Inc. v. U.S.,* 138 F.3d 333, 335-6 (8th Cir. 1998)

(Pierson, J., dissenting).  In a subject more similar to this case – administrative

exclusion as a provider of public assistance (food stamps) – the plaintiff's

complaint was reviewed under selective prosecution principles.  *Abu-Haleb, Inc.*

*v. U.S.*, 658 F. Supp. 453, 456 (N.D. Ohio 1987).  Thus, it is appropriate to review

the complaint under selective prosecution standards to determine if plaintiffs have

stated a plausible claim for relief.

### 1.  Similarly-Situated Comparators

The complaint does not present any facts from which it can fairly be inferred

that similarly-situated organizations or individuals of other races could have been

---

[4] *Bayou Des Familles Dev. Corp. v. U.S. Corps of Engineers*, 541 F.Supp. 1025, 1040 (E.D. La. 1982) (applying selective prosecution principles to U.S. Corps of Engineers' denial of a permit to construct a levee, and referring to the administrative sanctions as the proper exercise of "broad prosecutorial authority"); *Alexander v. Margolis*, 921 F.Supp. 482, 487-88 (W.D. Mich. 1995) (administrative revocation of medical license analyzed as selective prosecution issue); *Fishing Co. of Alaska, v. U.S.*, 195 F.Supp.2d 1239,  (W.D. Wash. 2002) (administrative enforcement of National Oceanic and Atmospheric Administration fishing rules); *C.E. Carlson, Inc. v. Sec. and Exch. Comm'n*, 859 F.2d 1429, 1437-8 (10th Cir. 1988) (Securities and Exchange Commission's administrative sanctions reviewed applying selective enforcement principles); *Thomas v. Bible*, 694 F.Supp. 750, 768-9 (D. Nev. 1988) (administrative exclusion from gaming industry reviewed for selective enforcement).

prosecuted *for the same offense* but were not.  *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) (stating "[w]e define a 'similarly situated' person for selective prosecution purposes as one *who engaged in the same type of conduct...*") (emphasis added).

Sparkman pled no facts suggesting the existence of Caucasian providers who contemporaneously violated federal law by placing a disqualified individual in a position of authority and who were not cited by DHS.  That is probably because no such comparators exist.  Sparkman instead makes loose intimations about DHS enforcement actions in other contexts and reasons.

Ignoring, for the moment, that Sparkman's assertions about the handling of Mississippi County Arkansas Equal Opportunity Commission (MCAEOC) are unfounded, MCAEOC is not even a valid comparator.  First, on information and belief, management of MCAEOC at the relevant period was predominately black.  If, as Sparkman contends, DHS treated MCAEOC favorably, that scarcely supports an inference of racial animus.  Second, the investigation of MCAEOC was conducted by the USDA Office of Inspector General, not by any DHS division or office.  MCAEOC appealed the sanctions and the ALJ reversed, finding that the agency's burden of proof had not been met.  *See* Ex. 3, the June 2, 2005, final order in MCAEOC's appeal.  As an exonerated provider, MCAEOC is not

similarly-situated to Sparkman, whose misconduct is a settled fact after state appeal.

Sparkman's speculations regarding the Tiny Tots program are equally unavailing. The allegations against Tiny Tots were that it overbilled for child care vouchers and committed licensing violations in other programs, not that it violated any CACFP requirement or placed a person on the National Disqualified List in a position of management. Not only was Tiny Tots' misconduct dissimilar to Sparkman's; it did not even take place in the same program.

Again ignoring that many of the statements in Sparkman's complaint are based on conjecture, there is no dispute that it was Tiny Tots, not DHS, who nominated Ms. Williams to assume the management of Tiny Tots. Likewise, there is no dispute that Ms. Williams was herself excluded from DHS programs under DHS Policy 1088 (thus dispelling any argument that DHS is loathe to exclude white individuals). Because there is no similarly-situated comparator, Sparkman has no plausible equal protection claim.[5]

### 2. *Racial Animus*

Sparkman's complaint fails to state a claim because there are no facts from which a racial animus could be reasonably inferred. To establish a discriminatory

---

[5] Sparkman has not alleged that it is a "class-of-one." In any event, a class-of-one claim does not extend to cases such as this that involve discretionary decisions. *Novotny v. Tripp County, South Dakota*, 664 F.3d 1173, 1179 (8th Cir. 2012); *Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794, 799-800 (8th Cir. 2009).

purpose, Sparkman must show that the official's decision to enforce the law was at least partially based on race. *U.S. v. Bell*, 86 F.3d 820 (8th Cir. 1996). Sparkman's general belief that racial animus was a motivating factor is not enough, even if Sparkman could show disproportionate impact, because the Equal Protection Clause is violated "only if that impact can be traced to a discriminatory purpose." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 272 (1979). Even an allegation that a defendant uttered racial slurs may not create a genuine issue of material fact regarding violation of plaintiffs' equal protection rights. *See Williams v. Bramer,* 180 F.3d 699, 706 (5th Cir. 1999); *Burton v. Livingston*, 791 F.2d 97, 101 n. 1 (8th Cir. 1986).   Applying this standard, Sparkman's naked assertions that that racial animus was a motivating factor in DHS' determination are inadequate to survive this motion to dismiss.

In fact, there is nothing at all in plaintiffs' complaint that would tend to suggest any kind of invidious motive on the part of any DHS official, nor tend to dispel that Sparkman's exclusion was the product of legitimate state enforcement actions.  The mere fact that DHS enforced federal regulations and its own policies against a single minority-owned business does not prove any sort of racial animus. Sparkman points to absolutely nothing in conduct or statements of the defendants that would amount to more than a "naked assertion" of racial discrimination.  *See Iqbal, supra.*  Sparkman's complaints therefore must be dismissed for failure to

state a claim upon which relief could be granted.  No plausible allegation of similarly-situated comparators or racial animus is presented by this complaint.

VI.   SPARKMAN CANNOT USE A COLLATERAL SELECTIVE-PROSECUTION CLAIM TO OBTAIN INJUNCTIVE RELIEF THAT WOULD EFFECTIVELY INVALIDATE A STATE COURT FINDING OF WRONGDOING.

Finally, in addition to the foregoing reasons supporting the dismissal of Plaintiffs' Complaint and First Amended Complaint, this Court should dismiss because to grant Plaintiffs the relief requested would stand the principal of judicial comity on its head.  Were the plaintiffs to ultimately prevail on any of their claims for injunctive relief in the amended complaint, they would effectively block DHS from taking action flowing from a valid final judgment of a state court that: 1) upheld DHS' administrative findings that plaintiffs violated program regulations; and 2) found no due process infirmity or other prejudice to the plaintiffs in the administrative adjudication.   In effect, plaintiffs want this Court to step in and reverse the consequences of a final state court decision upholding DHS' administrative findings and dismissing Sparkman's judicial review action.   Such invalidation-via-injunction would ignore the doctrine of claim preclusion, as discussed above, by refusing to give full faith and credit to the ultimate finding of the state court.  Such invalidation would also force DHS into the untenable position of either violating the state court mandate or violating this Court's mandate.

The results of the administrative action – that exclusion of Sparkman for violation of program regulations was supported by sufficient evidence – is not the subject matter of a selective-prosecution claim. Because Sparkman failed to challenge the evidence supporting these findings on appeal to the Arkansas Court of Appeals, they waived the issues.[6]

A *de facto* invalidation of the state court and administrative agency findings on Sparkman's culpability, via preliminary injunctive relief, would give Sparkman a remedy that their independent selective-prosecution claim would not provide even if Sparkman successfully litigated this matter to its conclusion. *See Armstrong,* 517 U.S. at 461 n.2 ("We have never determined whether dismissal of the indictment, or some other sanction, is the proper remedy if a court determines that a defendant has been the victim of prosecution on the basis of his race"); *Id.* at

---

[6] Sparkman asserts in its TRO reply that the Arkansas Court of Appeals only ruled on the due process issue, not its dispute as to whether or not it violated program rules (Dkt. No. 39, P. 2, 5). As to the program violation, the appellate court's decision was a direct review of the administrative decision. *Landmark Novelties, Inc. v. Arkansas State Bd. of Pharmacy,* 2010 Ark. 40  (2010).  ("In an appeal of a decision of an administrative agency . . . this court reviews the decision of the agency rather than the decision of the circuit court . . . .") (Citations omitted.) Accordingly, there can be no reasonable dispute that the Arkansas Court of Appeals' affirmance – finding no irregularity in the administrative proceedings – in fact upheld the administrative law judge's findings of sufficient evidence for the agency action.  That result is not surprising, given Sparkman's failure to take its opportunity to challenge the evidentiary basis for the determination that Sparkman violated program regulations (because Patricia Whitaker was a principal in the operation of Sparkman).  Because the Court of Appeals affirmed DHS' administrative action in its entirety, Sparkman's malfeasance is now a settled, litigated fact with preclusive effect in any state or federal proceeding.

463 ("a selective prosecution claim is not a defense on the merits"); *Toussaint v. McCarthy,* 801 F.2d 1080, 1086 (9th Cir.1986), *cert. denied,* 481 U.S. 1069 (1987) (stating when injunctive relief is sought against a state agency or official, such relief "must be no broader than necessary to remedy the constitutional violation"); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.1982) (stating [t]he function of a court is limited to determining whether a constitutional violation has occurred ... and to fashioning a remedy that does no more and no less than correct that particular constitutional violation").

As the United States Supreme Court has cautioned, "[a]selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  *U.S. v. Armstrong,* 517 U.S. 456, 463 (1996).

Assuming *arguendo* that plaintiffs' selective-prosecution claim had any merit, the only remedies that this court could provide in a final judgment would be: (1) prospective injunctive relief against state officials for any alleged discriminatory behavior or policies in the state program; or (2) damages, if qualified immunity was not applicable.  The relief Sparkman seeks in its complaint – overturning the exclusion – is not plausible relief in a selective prosecution claim, and thus its complaint must be dismissed.

CONCLUSION

For the above-stated reasons, this Court is respectfully urged to DISMISS the Complaint (Dkt. No. 1), or in the alternative, DISMISS the First Amended Complaint (Dkt. No. 37) should the Court grant leave to amend.

Respectfully submitted,

ARKANSAS DEPARTMENT
OF HUMAN SERVICES

Office of Chief Counsel

By:     **/s/ Breck G. Hopkins**

Breck G. Hopkins, ABN 77065
Chief Counsel
P. O. Box 1437, Slot S260
Little Rock, AR 72203-1437
Phone: (501) 682-8934
Fax: (501) 682-8009
E-mail: breck.hopkins@arkansas.gov

**/s/Kate Bridges**

Kate Bridges, ABN 2001224
Attorney
Office of Chief Counsel
P. O. Box 1437, S260
Little Rock, AR 72203
Phone: (501)-682-0429
Fax: (501)-682-1390
E-mail: kate.bridges@arkansas.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Brief in Support of Defendant's Motion to Dismiss has been served on Counsel for the Plaintiffs by utilizing the CM/ECF system wherein a copy was electronically served on the 21st day of June, 2012 to the following:

John W. Walker
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, AR  72206

**<u>/s/ Breck G. Hopkins</u>**