IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


SPARKMAN LEARNING CENTER and
JESSE CARTER                                                                    PLAINTIFFS


VS.                              CASE NO. 1:06-CV-1111


ARKANSAS DEPARTMENT OF HUMAN
SERVICES; JOHN SELIG, individually and in his
official capacity as Director of the Arkansas
Department of Human Services; and
TONYA RUSSELL, individually and in her official
capacity as Director of Division of Child Care
and Early Childhood Education of the Arkansas
Department of Human Services                                        DEFENDANTS

### MEMORANDUM OPINION

Plaintiffs Sparkman Learning Center and Jesse Carter filed an Amended Complaint against Defendants Arkansas Department of Human Services, John Selig, and Tonya Russell, alleging violations of 42 U.S.C. § 1983 and the Equal Protection and Due Process clauses of the Fourteenth Amendment.  (ECF No. 64).  This matter is now before the Court on Defendants Arkansas Department of Human Services, John Selig, and Tonya Russell's Motion to Dismiss. (ECF No. 41).  Plaintiffs have filed a response.  (ECF No. 58).  The Court finds this matter ripe for consideration.[1]

---

[1] On May 6, 2012, Plaintiffs filed an Amended Complaint without obtaining leave of Court pursuant to Fed. R. Civ. P. 15(a)(2). (ECF No. 37).  The present Motion to Dismiss was directed toward the improperly filed Amended Complaint.  Subsequent to the filing of this Motion to Dismiss, Plaintiffs obtained leave of Court to file an Amended Complaint.  (ECF No. 63).  This properly filed Amended Complaint (ECF No. 64) is substantively identical to the improperly filed Amended Complaint.  (ECF No. 37).  While the present Motion to Dismiss preceded Plaintiff's properly filed Amended Complaint, the Court will consider the motion and its briefing as being directed toward this later-filed Amended Complaint.

1

**BACKGROUND**

The Arkansas Department of Human Services ("DHS") Division of Child Care and Early Childhood Education ("DCCECE") is the unit of state government that regulates child care facility licenses and DHS nutrition programs in child care facilities.  Defendant John Selig is the Director of DHS.   Defendant Tonya Russell is the current DCCECE Director.   Plaintiff Sparkman Learning Center is a licensed day-care facility with locations in Sparkman, Arkadelphia, and Camden, Arkansas.   Until recently, Sparkman Learning Center provided disability services funded by DHS.  Plaintiff Jesse Carter is Sparkman's Executive Director.  Mr. Carter is African-American, and the majority of the children who attend Sparkman Learning Center are African-American.

Sparkman Learning Center was a participant in the Child and Adult Care Food Program ("CACP"), a program overseen by DHS and funded by the United States Department of Agriculture ("USDA").   Regulations prohibit providers enrolled in CACP from placing a disqualified individual in a position of authority.  7 C.F.R. § 226.6 (c)(3)(ii)(B).  Pursuant to DHS Policy 1088, the violation of CACP regulations can result in the exclusion of the provider from receiving DHS funding.   In 2005, DHS sent notification of its intent to permanently exclude Sparkman from participation in all DHS-funded programs pursuant to Policy 1088 for allegedly placing a disqualified individual, Patricia Whitaker, in a position of authority at Sparkman.   Sparkman appealed the DHS decision, and a hearing was held before a DHS administrative law judge pursuant to the Arkansas Administrative Procedures Act, Ark. Code Ann. § 25-15-201.  The DHS decision to permanently exclude Sparkman was upheld.

Due to alleged irregularities at this initial hearing–irregularities that Plaintiffs claim were motivated by race–the first ruling was voluntarily disregarded by DHS and a second hearing was

held before a hearing officer who was not affiliated with DHS.  The DHS decision was once again upheld by this second hearing officer.  Sparkman appealed the hearing officer's decision to the Pulaski County Circuit Court and argued that it was deprived of due process at the second hearing.  Specifically, Sparkman alleged that there were ex parte communications between DHS and the hearing officer.  The circuit court affirmed the decision of the hearing officer, finding that the procedure employed at the second hearing did not violate due process.  Sparkman then appealed to the Arkansas Court of Appeals.  The Court of Appeals found no due process violations and upheld DHS's decision.  Sparkman did not appeal to the Arkansas Supreme Court, and the time for doing so has passed.  Therefore, all state court appeal opportunities have been exhausted.  On April 4, 2012, after the Arkansas Court of Appeals decision upholding the termination decision was issued, DHS again notified Sparkman that they were to be permanently excluded from participation in all DHS-funded programs.  (ECF No. 37, Exh. 2).  It is the Court's understanding that this exclusion has taken effect and that Sparkman is not receiving any DHS funding at this time.

While Sparkman was in the process of administratively appealing DHS's decision to terminate funding, Sparkman and its director, Jesse Carter, filed the present suit against DHS, John Selig, and Tonya Russell in December 2006.  Plaintiffs claim that they were targeted for exclusion and disparately treated by Defendants on the basis of race, in violation of 42 U.S.C. § 1983 and the Equal Protection and Due Process clauses of the Fourteenth Amendment.  Plaintiffs' original complaint relied heavily on the alleged irregularities in the first administrative hearing.  On March 22, 2007, this Court denied a motion for preliminary injunction filed by Plaintiffs (ECF No. 2) and abstained from hearing Plaintiffs' claims under the *Younger* abstention doctrine.  (ECF No. 22).  Under the *Younger* doctrine, federal courts may not enjoin

pending state court proceedings except in very unusual situations. *Younger v. Harris*, 401 U.S. 37, 43-55 (1971). The Court held that abstention was warranted because Plaintiffs had an "adequate opportunity…to raise constitutional challenges in state court proceedings[.]" However, because there was a possibility of claims remaining after the conclusion of the state court proceedings, the Court stayed this case pending the resolution of the state court proceedings rather than dismissing Plaintiffs' claims.

After the state court appeals process had been exhausted, the Court granted Plaintiffs' motion to reopen the case on May 11, 2012. Thereafter, Plaintiffs amended their Complaint to add more detailed factual allegations regarding DHS's alleged discriminatory treatment of Sparkman over the past fifteen years. The Amended Complaint continues to allege that Sparkman was denied due process in each of the state administrative hearings. Plaintiffs request declaratory and injunctive relief as well as monetary damages.[2] Defendants now move for the dismissal of Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

The Court should grant a motion to dismiss if the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The federal rules do not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[A] formulaic recitation of the elements of a cause of action," however, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] On September 5, 2012, the Court denied Plaintiffs' second request for a preliminary injunction and temporary restraining order. (ECF No. 65).

(2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, the complaint must be liberally construed in the light most favorable to the plaintiff, and the Court must accept as true all factual allegations in the complaint. *Twombly*, 550 U.S. at 554-555; *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

## DISCUSSION

Plaintiffs claim that they were targeted for exclusion and were disparately treated by Defendants on the basis of race, in violation of 42 U.S.C. § 1983 and the Equal Protection and Due Process clauses of the Fourteenth Amendment.  Specifically, Plaintiffs allege that DHS terminated their funding due to alleged program violations while choosing to overlook the program violations of Caucasian providers.  Plaintiffs maintain that Defendants have a "manifest intent to put Plaintiffs out of business."  Additionally, Plaintiffs contend that they were not afforded due process at either of their administrative hearings that took place after DHS's notice of termination.

In their Motion to Dismiss, Defendants argue that each of Plaintiffs' claims are precluded by the final decision of the Arkansas Court of Appeals.  In the alternative, Defendants argue that John Selig and Tonya Russell are entitled to qualified immunity in their individual capacities; that Plaintiffs' equal protection claim fails due to a lack of a similarly situated comparator and a lack of facts establishing racial animus; and that granting Plaintiffs' claims for injunctive relief would result in this Court impermissibly invalidating the state court's finding that Sparkman violated DHS regulations.  The Court will begin its analysis by addressing the threshold issue of whether Plaintiffs' claims are precluded by the state court decision.

### A.  The preclusion of Plaintiffs' due process claims

Plaintiffs argue that they were deprived of due process at their first administrative hearing in 2006.  Plaintiffs allege that the administrative law judge that was initially assigned to the case, an African-American, was removed from the case because he told his supervisor that he planned to rule in Sparkman's favor.  A new judge was assigned to the case and issued an order upholding the DHS decision.  After Sparkman alleged that there were due process violations at the first hearing, DHS agreed to participate in a second hearing in front a hearing officer who was not affiliated with DHS.  In January 2008, this hearing officer upheld the DHS decision, finding that DHS had carried its burden of proving that Sparkman had placed a disqualified individual in a position of authority and that termination was appropriate on these grounds.  Sparkman appealed the second decision to the Pulaski County Circuit Court and argued that it was deprived of due process at the second hearing due to ex parte communications between DHS and the hearing officer.  The Pulaski County Circuit Court found no due process violation and upheld the decision.   On appeal, the Arkansas Court of Appeals affirmed.

Defendants, in addition to arguing that Plaintiffs *were* afforded due process, argue that Plaintiffs are precluded from litigating their due process claims in this Court.  "Under 28 U.S.C. § 1738, the federal courts are required 'to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" *Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010) (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466 (1982)).  Full faith and credit issues implicate the law of res judicata and claim preclusion.   *Id*.  In Arkansas, claim preclusion bars the relitigation of claims when five factors are present:  "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully

6

contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies." *Hardy v. Hardy*, 2011 Ark. 82, at 6-7, ___ S.W. 3d ___.

All of these claim preclusion elements are met here. First, it is undisputed that the state courts properly exercised jurisdiction over Sparkman's due process claim. Second, both suits involve the same claim because both suits allege that Sparkman was deprived of due process during the administrative appeals process due to the removal of the administrative law judge in the first hearing and ex parte communications in the second hearing. Third, the two parties involved in the state court administrative appeal, Sparkman and DHS, are involved in the present suit. Fourth, Sparkman appears to have fully contested the claims that they chose to pursue in the administrative proceeding, including their due process claims. In other words, Plaintiffs do not contend that their due process concerns were not fully argued or that they were not given the opportunity to fully appeal any aspect of the ALJ's decision. Last, and most importantly, the Arkansas Court of Appeals issued a final judgment on the merits as to Plaintiffs' due process claims. The court fully addressed Plaintiffs' arguments on appeal and found no reason for reversal on due process grounds.

For this Court to now find that Plaintiffs' due process rights were violated in the second administrative hearing would be to contradict the final judgment of the Arkansas Court of Appeals. Because the five elements of claim preclusion are met, the Court finds that Plaintiffs are precluded from bringing claims relating to due process violations and bias in the state court proceedings.

**B.  The preclusion of Plaintiffs' equal protection claims**

Plaintiffs argue that they were targeted for exclusion and were disparately treated in the exclusion process because of race.  Plaintiffs' evidence of race discrimination includes two examples of facilities that allegedly committed program violations yet managed to avoid having their DHS funding terminated.  Plaintiffs allege that the predominately white board of directors of the Mississippi County Arkansas Equal Opportunity Commission ("MCAEOC") mismanaged approximately $1,000,000.  While DHS did issue a termination notice to MCAEOC, the termination decision was reversed on appeal by an ALJ in a DHS hearing.  Plaintiffs contend that DHS made a conscious decision to half-heartedly prosecute MCAEOC so that DHS's termination decision would be reversed.  Next, Plaintiffs allege that in 2005, DHS went out of its way to place a white female in charge of Tiny Tots I and Tiny Tots II to ensure that the facilities, the majority of whose students were African-American, were not terminated for alleged overbilling and licensing violations.  Plaintiffs also contend that race discrimination was evident in the first administrative hearing because the presiding ALJ, an African-American male, was allegedly removed and prevented by DHS from presiding over the case.

Defendants vigorously dispute Plaintiffs' characterization of the events noted above. Defendants maintain that the evidence shows no racial animus on the part of DHS that would sustain Plaintiffs' equal protection claims.  Defendants also contend that, much like Plaintiffs' due process claims, Plaintiffs' equal protection claims may not be litigated in this Court due to the law of claim preclusion. Defendants argue that, while the equal protection issues were not litigated in the state court proceedings, Plaintiffs had the opportunity to raise these issues there and should have done so.

Plaintiffs, on the other hand, argue that their equal protection claims are not precluded. In essence, Plaintiffs maintain that the fourth element of claim preclusion (that both suits involve the same claim or cause of action) is not met as to their equal protection claims because these claims were not considered and could not have been considered by the judicial officers in the administrative proceedings.   According to Plaintiffs, "[t]he only authority DHS had was the authority to reverse or affirm its decision.  It did not then, and does not now, have the authority to adjudicate constitutional issues."

Under Arkansas law, claim preclusion applies not only to claims that were *actually* litigated, but also to claims that *could* have been litigated.  *Beebe v. Fountain Lake Sch. Dist*., 365 Ark. 536, 544-45, 231 S.W.3d 628, 635 (Ark 2006).  "Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata and claim preclusion will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies."  *Id.* (citing *Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 13, 59 S.W.3d 438, 443 (Ark. 2001)).

The Court must now determine: 1) whether Plaintiffs could have raised their equal protection arguments during the initial DHS hearing; and 2) whether failing to raise those arguments in the DHS hearing and subsequent state court appeals precludes Plaintiffs from raising those claims in this suit.

*1.  Plaintiffs' opportunity to raise their equal protections claims in the DHS hearing*

An overview of the law pertaining to Arkansas administrative agency decisions is necessary to understand the scope of administrative proceedings and their preclusive effect.  The Arkansas Administrative Procedure Act provides that "in every case of adjudication" all parties shall be afforded a hearing to be conducted within the agency.  Ark. Code Ann. § 25-15-208.  At this hearing, "[o]pportunity shall be afforded all parties to respond and present evidence and

argument on all issues involved." *Id*. Parties are entitled to judicial review of the final agency decision that results from this hearing. Ark. Code Ann. § 25-15-212. The review of the decision is, generally, confined to the record that was developed during the agency proceedings. Ark. Code Ann. § 25-15-212(g). The reviewing court may reverse the decision of the agency if it finds that the agency's decision was, among other things, in violation of constitutional or statutory provisions; made upon unlawful procedure; or not supported by substantial evidence of record. Ark. Code Ann. § 25-15-212(h).

Plaintiffs maintain that their DHS hearings did not afford them the opportunity to raise their arguments regarding the disparate treatment of white providers and the leniency afforded to white providers in similar DHS enforcement proceedings. The Court disagrees. Constitutional arguments, such as an equal protection claim, may be raised at the administrative agency level. This is illustrated by the fact that the Arkansas Supreme Court has held that it will not entertain constitutional arguments on appeal that were not first raised at the administrative agency level. *See Arkansas Health Servs. Agency v. Desiderata, Inc.,* 331 Ark. 144, 148, 958 S.W.2d 7, 8 (Ark. 1998); *Arkansas Bd. of Examiners in Counseling v. Carlson*, 334 Ark. 614, 627, 976 S.W.2d 934, 941 (Ark. 1998). For example, the Arkansas Supreme Court has held that, while an administrative law judge "may not have authority to declare statutes unconstitutional, such constitutional issues should first be raised at the Administrative Law Judge…level, because such issues often require an exhaustive analysis that is best accomplished by an adversary proceeding, which can only be done at the hearing level." *Carlson*, 334 Ark. at 627.

In accordance with the principles set forth above, this Court initially abstained under the *Younger* doctrine and found that there was "an adequate opportunity for Plaintiffs to raise constitutional challenges in state court proceedings" and did not delineate between claims or

single out Plaintiffs' equal protection claim as one that could not be litigated in the state court proceedings. Subsequent to that abstention, Plaintiffs were granted a new agency hearing in front of a different hearing officer. Looking again at the facts surrounding Plaintiffs' claims makes it clear that this second agency hearing would have been a proper forum to raise equal protection arguments. Plaintiffs maintain that DHS officials conspired to put them out of business and targeted them for termination by enforcing Policy 1088 to the fullest extent while refraining to enforce similar policies for similarly situated white providers. Plaintiffs continue to allege that they were aggressively "prosecuted" to a discriminatory degree in each of the DHS hearings and that the removal of the first ALJ exemplifies DHS's discriminatory behavior. The presentation of these charges would be relevant, and necessary, to an administrative proceeding where the basis for DHS's termination decision was being contested. Given the broad provisions of the Arkansas Administrative Procedures Act giving all parties the opportunity "to respond and present evidence and argument on all issues involved[,]" Ark. Code Ann. § 25-15-208, the Court finds no inherent barrier to the presentation of Plaintiffs' equal protection arguments in a DHS hearing addressing the merits of a DHS decision to terminate funding. Had Plaintiffs properly raised these equal protection issues in the DHS hearing, they would have been made a part of the record and Plaintiffs would have been free to raise them again in any subsequent state court appeals.

Additionally, to the extent that Plaintiffs allege that aspects of the DHS hearing itself violated equal protection, they clearly could have raised these issues in their state court appeals since the reviewing courts had the power to reverse the agency decision if actions in the hearing ran afoul of constitutional or statutory provisions. Ark. Code Ann. § 25-15-212(h). *See also Green v. Benden*, 281 F.3d 661, 664 (7th Cir. 2002) (abstaining from a § 1983 action and holding

that a state court appeal from an administrative hearing was the proper forum for an African-American psychologist to argue that the state department of professional regulation had "violated his rights to due process and equal protection by targeting him for disciplinary action based on his race" and "had conspired to deny [him] the opportunity to ... practice his profession based on his race[.]").

   2. *The preclusive effect of failing to raise equal protection claims in the DHS hearing*

   Since it has been determined that Plaintiffs had the opportunity to raise their equal protection claims in the administrative proceedings and subsequent appeals, the question now becomes whether failing to raise those claims precludes Plaintiffs from raising them in this federal suit.

   Courts applying claim preclusion doctrines similar to Arkansas's have recognized that the failure to raise an equal protection claim at the administrative agency review level may preclude that claim from being the subject of a federal lawsuit filed after state proceedings have concluded. *Balcerzak v. City of Milwaukee, Wis.*, 163 F.3d 993 (7th Cir. 1998); *Farrar v. Handel*, CIVA 109CV-0455, 2009 WL 4041895 (N.D. Ga. Nov. 19, 2009) aff'd sub nom. *Farrar v. Kemp*, 381 F. App'x 910 (11th Cir. 2010); *Modern, Inc. v. Florida, Dep't. of Transp.*, 381 F.Supp.2d 1331, 1345 (M.D. Fla. 2004).  The Court recognizes that "[t]here are due process limitations on when claim or issue preclusion could act as a bar in a § 1983 suit. Namely, if a litigant were denied a full and fair opportunity to litigate, subsequent relitigation would not be barred." *Balcerzak*, 163 F.3d at 996 (citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 1898 (1982)).

   Plaintiffs seem to argue that, because the only recourse in the state court proceedings was reversing or affirming the DHS termination decision, versus finding a § 1983 violation and

awarding money damages, they were not truly given the opportunity to fully and fairly litigate their equal protection claims.  The Court disagrees.  In *Balcerzak*, 163 F.3d at 997, the Seventh Circuit dealt with a very similar situation.  Two Milwaukee police officers were discharged after a hearing before the Milwaukee Board of Fire and Police Commissioners.  The officers filed a statutory appeal to a Wisconsin circuit court.  Ultimately, the state court found the discharges to be unreasonable and the officers were reinstated after a suspension period.  After this state court decision, the officers filed suit in federal court pursuant to § 1983 alleging that the board, the police chief, and other defendants had disciplined and targeted the officers for racially motivated reasons.  The district court, applying Wisconsin claim preclusion principles, dismissed the officers' equal protection claims.[3]  On appeal, the officers argued that the administrative proceedings were not the proper forum for their equal protection arguments and that claim preclusion should therefore not apply.  The Seventh Circuit disagreed finding that there was nothing to suggest that  the officers "could not have offered such evidence in the penalty phase of the Board hearing."  *Id*. at 997.  The officers also argued that because the only recourse in the state court proceedings was either reversing or affirming the board's termination decision, versus awarding money damages under § 1983, the state court judgment should not be given preclusive effect.  The Seventh Circuit also found that argument unpersuasive.  The Court concluded with this assessment of the case:

> The proper course for plaintiffs in this case would have been to seek to introduce evidence before the Board concerning alleged racial disparities in punishment….If the Wisconsin state courts were to find the Board's decision to discharge to be based upon improper racial bias, then that determination would likely have issue preclusive effect in a subsequent §

---

[3] Wisconsin's claim preclusion approach is in line with Arkansas's:  "In order for the earlier proceedings to act as a claim-preclusive bar in relation to the present suit, the following factors must be present: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction.  *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723, 728 (Wis. 1995).  *See also Balcerzak*, at 996 ("[I]f a second suit arises from the same transaction, incident, or factual situation as an initial suit, res judicata will bar the second suit.").

> 1983 suit against the Board.  As it is, plaintiffs failed to present evidence of racial bias to the Board or Wisconsin state courts and have failed here to show that Wisconsin courts would not have considered such evidence.

*Id*. at 997 (internal citations omitted).

The factual scenario and claim preclusion principles applied in *Balcerzak* are much like those found in the present case. The Arkansas Administrative Procedures Act provided Plaintiffs with the opportunity to contest their termination in an adversarial proceeding before an ALJ. As discussed extensively above, Plaintiffs had the opportunity to raise their equal protection claims in that adversarial proceeding.  Plaintiffs were then given the opportunity to appeal the ALJ decision to the circuit court and the court of appeals.  Had Plaintiffs actually attempted to submit evidence in the DHS hearing relating to their equal protection claim, the Arkansas courts would have had the opportunity to consider the evidence on appeal and determine whether the initial DHS termination decision and subsequent hearing determination were motivated by improper racial considerations.  That determination, whether in favor of or against Plaintiffs, would have had preclusive effect in this § 1983 action for damages. *See State v. Thompson*, 343 Ark. 135, 34 S.W.3d 33, 36 (Ark. 2000) ("When an issue of ultimate fact has once been determined by a valid and final judgment, collateral estoppel precludes relitigation of that issue between the same parties in any future proceeding.").

In sum, Plaintiffs' failure to raise their equal protection claims in the administrative hearing and subsequent appeals, where they could have been properly considered, precludes this Court from hearing those claims now.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion to Dismiss (ECF No. 41) should be and hereby is **GRANTED**.   Plaintiffs' Amended Complaint is hereby **DISMISSED WITH PREJUDICE**.   An Order of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 1st day of February, 2013.


        /s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge